Parmlee v. Leonard.

to deliver them; and though he is not bound to bring them into court, yet he must show that they are at the place appointed for payment, and that they have always been there ready to be delivered, *Johnson* v. *Baird*, 3 Black. 182; *Nicols* v. *Whitney*, 1 Root, 443; *Barns* v. *Graham*, 4 Cowen 452. The District Court did not err then, in refusing the instruction asked by the plaintiff. See also *Games* v. *Manning*, 2 G. Greene 251; *Triplet* v. *Williams*, 3 Iowa, 519.

PARMLEE v. LEONARD.

1. TRESPASS. *Held*, that a sheriff who seizes property beyond the limits of his own county, under a writ of attachment issued by the District Court thereof, is a wrong doer, and is liable to the owner or possessor in an action of trespass.

2. SAME: EVIDENCE. As title draws the possession, the defendant in such action, may show that at the time the alleged trespass was committed, the title of the property in controversy was not in the plaintiff.

3. SAME. The defendant may also show that the plaintiff held such property as the servant of the owner.

*Appeal from Scott District Court.*

FRIDAY, JUNE 24.

ACTION IN TRESPASS. Verdict and judgment for the defendant. The plaintiff appeals. The material facts appear in the opinion of the court:

*James Grant*, for the appellant.

I. The plea is the general issue, or a general denial. It is not competent for the defendant, who is a wrong doer, to show title in another, without the authority of such alleged owner. *Dimmick* v. *Chapman*, 11 John. 132; *Cook* v. *Howard*, 13 Ib. 284; *Fiske* v. *Small*, 25 Maine 457; *Thompson* v. *Moore*, 36, Ib. 47.

*Cook, Dillon & Lindley*, for the appellees.

I. When the plaintiff, in an action of trespass, relies upon possession alone, that possession must be actual and exclusive. It is a rule of law, that as to personal chattels, general property draws the possession. 2 Stark. Ev. note *i*, p. 1099, citing Best, C. J.; 5 Bing. 9; 15 Eng. Com. Law R. 345; *Matson* v. *Cooke*, 4 Bing. N. C. 392; 3 Eng. Com. Law R. 388; 2 Greenl. Ev. sec's 618, 614, 625, *Root* v. *Chandler*, 10 Wend. 112; *Walcott* v. *Pomroy*, 2 Pick. 122; *Putnam* v. *Wiley*, 8 John. 435; 1 Chit. Pl. 194 and 195.

II. The law is well settled that the possession of the servant is the possession of the owner, and that the servant

cannot maintain the action of trespass.   1 Smith's Lead. C.; 10 Mass. 120, note.[1]

WOODWARD, J.—The plaintiff sued in trespass, for the taking and carrying away by defendant, and converting to his own use, one covered buggy, two horses, one set of double harness, a rifle, and a gun, and one trunk, with its contents, containing, among other things, eleven hundred dollars in money, and clothing, in the county of Powesheik.   The defendant pleaded, first, a denial, and second, in justification, in that at the suit of S. B. Pomroy & Co. against one Charles S. Parmlee, a writ of attachment was sued out from the District Court in Scott County, and directed to him as the sheriff of that county, and, that, by virtue of that writ, he attached the said property in Scott County.   The plaintiff new assigned, alleging a trespass in Powesheik County, and not in Scott.   To this, the defendant answered, denying all the averments of the petition.

The following are the facts, as shown in the evidence, which lead to the questions of the case:   Prior to July 20, 1855, S. B. Pomroy & Co., of Chicago, pursued the business of purchasing produce in Geneseo, Illinois, through Charles S. Parmlee as their agent.   At that date, this relation ceased, and another was entered into, to take effect on the 1st of August, 1855.   On the 8th of August, 1855, C. S. Parmlee left Geneseo, and, with his brother, Henry D., went to Davenport, Iowa, and from that place proceeded on their way to Council Bluffs, in Iowa.   Eleazer Pomroy followed them, and at Davenport obtained a warrant for the arrest of the said Charles S. on a charge of embezzlement of the money and property of the firm of S. B. Pomroy & Co., under sec. 3284 of the Code, for the purpose of taking him back to Illinois.   The said Pomeroy also instituted a civil suit, in the name of the above firm, against the same

---

1.   The proposition made with authorities cited, by counsel in the discussion of the assignments of error in the instructions of the court below, are not reported, for the reason that they are not determined by the opinion of the court.

party as defendant, and sued out a writ of attachment from the District Court in Scott County. The said Eleazer Pomroy, with H. Leonard,. who was the sheriff of Scott County, and John H. Taylor, one of his deputies, followed the said Charles and Henry Parmlee, and overtook them in Powesheik County, at the close of the day, when they had stopped, and were about encamping for the night. As the occurrences at this time are important, and different views are taken of them by the parties, the substance of the testimony of Taylor, the deputy sheriff, is given.

After stating that he was deputy sheriff under Leonard, and that he was requested, in August, 1855, by Leonard, to go with him and Pomroy, after Charles S. Parmlee, and after the detail relative to finding and meeting them, he says, Leonard told ·Charles, the tallest, that he had a warrant for his arrest. There were two guns near the wagon or a tree; Leonard picked them up; I did not have them that night; Leonard told me to harness up the horses and wagon that we found there; Henry Parmlee· said the horses were his horses; Leonard told them he had a writ for them too; Henry wanted to see it; Leonard said it was' too dark to read it then—he would read it at the next stopping place; Leonard was getting ready to go back to a place to stay all night; they did not want to go back, one or the other did not. I can't say which wanted to stay where he was; Leonard said they must go back; I started to hitch up the team; Henry said one of the horses would kick a stranger, and came and helped me harness them; Charles rode with Leonard and Pomroy in the carriage we came out in, and Henry rode with me in the wagon, and after the horses I took from them; we went two or three miles to a house, and stopped all night; Leonard, myself and some others put up the horses; Pomroy said to Leonard he would stay and watch the things; we got our suppers, and something was said between Pomroy, Leonard and myself, how we could watch them, and see that they did not get to the trunk or valise; Henry Parmlee had said to me, when we turned from their camp ground to go

back, that it might all be right, but when he could get where there was a lawyer, he would see; I told this to Leonard, and we made as few stops as possible; the first night we left one of the horses in charge of the landlord; we took possession of the two horses, buggy, baggage, two guns, &c., in Powesheik County, and brought them to Davenport, and left them at the Pennsylvania House; I did it by order of Leonard; I went out to assist him in taking these two men.    There was a trunk and valise among the baggage; we left one horse because he was sick; I had the trunk in my charge; it was opened in Scott County, by Leonard; Henry P. was asked for the key, and gave it to Leonard; it had clothing in it, and between ten and eleven hundred dollars in gold; Henry P. wanted to get a shirt out of it, the other side of Iowa City, in Powesheik or Iowa County, but the sheriff objected to his looking into it; I considered it under the sheriff's control from the time we took it; I took possession of it by Leonard's order; it was under my control, and first put under my control in Powesheik County.    On cross examination, he states, that the sheriff put that team in my possession—told me to hitch up the horses and bring back the horses, buggy and contents; I know Leonard took the guns; when he took the horses and wagon, I heard Henry say he would see if it was all right; Leonard and Pomroy concluded to leave the sick horse; Henry said he was not going to have anything to do with them, and they might do as they pleased; Henry and Charles both held off; Leonard told Henry he had an attachment for all the traps; Henry said the team was his, he wanted to see the writ; Leonard said he and Pomroy went out intending to bring the men, horses, &c., back anyhow, and if they did not come voluntarily, they would get another writ; I kept possession of the team, wagon and trunks as long as he ordered me; he told me how to perform—to take possession, and see that nobody interfered with me.

The sheriff having returned with the person and property to Davenport, upon the examination of Charles S. Parmlee,

under the warrant, the trunk was opened, and gold to the amount of $1089 being found there, it was taken possession of by the sheriff, who returned the trunk and valise to the plaintiff.

Under the above facts, the plaintiff contends that the defendant is liable as in trespass. On the other hand, the defendant contends against his liability, holding that Henry Parmlee returned voluntarily, and that the sheriff did not levy upon the property in Powesheik County. Without doubt, Henry Parmlee's action was voluntary in some sense, that is, he was at liberty to go on, or go where he pleased, but it is equally true that his effects were not under his control, and that if he went elsewhere than to Davenport, he must be separated from them. In this sense, therefore, he was under a necessity of returning. But the action is not brought for a trespass to the person.

In respect to the property, it is impossible not to say, that the sheriff took possession of it, to the exclusion of both the Parmlees, and took it back to Davenport, without consulting their wishes. So far as this is concerned, the case is clearly with the plaintiff.

But the weight of the case is made to turn upon, or at least, the principal effort is made upon the question of the ownership or possession of the money which was in the trunk of the plaintiff. The plaintiff does not claim to be the owner of this, but, so far as this is concerned, bases his action upon his possession. The defendant contends that the possession was not in the plaintiff, but that Charles S. was the owner of it, and that his title drew the possession after it, and that, he being present, the possession was in him.

In setting out the facts as they took place in Powesheik County, at the taking of the property, it was in contemplation to take a more special and detailed view of the case, including the questions and the instructions, both those requested and those given; but as there are twenty-one asked and refused, and fifteen given, which were probably intended to embrace a portion at least, of those requested, it is found

to require more time and space than we are able to give a single cause, and we are compelled to dispose of it in a more brief and general manner. And another reason strongly impelling to this course is, that the cause must be reversed upon the facts, and the state of the case in reference to the articles of personal property other than the money.

There was other testimony beside that given in the statement. It seems clear that *some* of the property belonged to the plaintiff, but the questions relating to the money, (that being much more in value than the rest of the property,) appear to have absorbed the attention of all concerned in the trial, and the others were lost sight of, until the effect was that a verdict was rendered in mass for the defendant, overlooking, as we are forced to believe, the inquiry whether some of the property, beside the money, did not belong to the plaintiff. And this was not an insignificant inquiry, since there was property, which, all told, might represent a value of three hundred dollars, more or less, beside the fact of taking it back to Scott County. Should it be suggested that this was inquired of and embraced in the verdict, the suggestion would subject it to the imputation, at least, of being against the evidence. And either of these views, would lead to the same result. The amount affected by this view, cannot be treated by the court as falling within the maxim *de minimis non curat lex*, and the plaintiff claims his right, and the court has no authority to refuse it.

As is remarked above, the money and the questions connected with it, occupy nearly the entire case, and the instructions scarcely touch any other matter. In reference to this, the action is based upon the possession. The defendant undertook to show that Charles S. Parmlee was the owner of it, and that his presence, joined with his right of property, drew the possession to him, so as to exclude the right of the plaintiff to sustain an action in relation to it; or that he, being the owner, deposited it with Henry, the plaintiff, as his servant only. It was competent, without doubt, for the defendant to do this, and to this end to offer the testimony of

the witnesses in reference to the transactions in Illinois, concerning the house and lot. The objection of the plaintiff to this evidence, was not entirely well taken, for, if a case might be made in which the title would draw the possession, or showing that the plaintiff was the servant of Charles S., or that the trunk was in common use between the two—in fine, if the defendant might show that the possession was actually and really in Chas. S., he might, also, and to that end, show the title to be in him. But, in pursuing this line of inquiry, the court should instruct upon the kind or degree of interest in Charles, which would produce these effects, and whether C. S. must have the actual legal title to the money, or whether it was sufficient that he should hold to it such relations as would authorize a creditor of his to levy upon it.

Before saying anything in relation to the instructions refused or those given, we must remark that it is regarded as sufficiently proven, that the defendant took possession of, and exercised exclusive and absolute control over all the personal property taken in Powesheik County, and named in the plaintiff's petition, against the will of the plaintiff, and took the same back to Davenport. And in examining the case for trial, whether as judge or jury, it should be excluded from view, that the defendant was the sheriff of Scott County, or that he then had, or afterward obtained, a writ of attachment against Charles S. Parmlee. He should be regarded precisely the same as any other person, who had no writ of attachment, and who was not a sheriff. It is, undoubtedly, difficult to exclude entirely such facts from the mind, under like circumstances, but it is none the less certain that it is the duty of the tribunal to do it, to every degree possible. Leonard did not act *as sheriff*, in Powesheik County, but simply as any other person.

The instructions requested by the plaintiff, were drawn with close reference to the foregoing considerations. There were twenty-one of these, all which were refused to be given by the court, but it is not supposed that they were refused as being *all* erroneous in point of law, but we presume the

Parmlee v. Leonard.

court intended to embrace such parts of them as he believed to express the law, in those which were given. It would expand this opinion to too great an extent, should we attempt a detailed examination of them, and a comparison of them with those of the court. Some of them, without doubt, express the law, and it is equally true that the sense of a portion is contained in those given by the court.

But, again, the plaintiff claims that there is error in the instructions which were given. We do not propose, on this assignment, either, to enter into a critical examination. We must content ourselves with expressing the thought that error could probably be found in some of these, as in the second, for instance. And it is difficult also to reconcile some of them with others. Thus, it seems to us, that while the tenth expresses the law, the second is not in accordance with it. The tenth would give the plaintiff the right to sue in a certain state of facts, while the second would deny him this under the same facts; and the state of the facts here supposed was such, or nearly such, as the jury would be very likely to find, so that there was a strong probability of their feeling the incongruity of the instructions. And similar remarks might possibly be made of others.

Another difficulty experienced by us, in regard to these instructions, is that if some are pressed as being sufficiently favorable to the plaintiff, while this must be conceded, we are met by that part of the motion for a new trial which assigns as a cause, that the verdict was against law, and against the instructions of the court. This is felt with particular force in view of that part of the property taken, of which, so far as we can perceive, the plaintiff was the unquestioned owner. We suppose him to have been the owner of some portions of this, and it was taken back to Scott County; and we are unable to answer the question of the plaintiff in relation to the verdict, at the opening of his argument.

That these difficulties and defects may be cured, we think there should be a new trial.

Judgment reversed, and cause remanded.